**IN THE UNITED STATES COURT**

**OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| WALTER ROSALES, JANE DUMAS, SARAH ALDAMAS, VAL MESA, JOE COMACHO, BERNICE MESA, VIVIAN FLORES, MARIE TOGGERY, LESLIE A. MESA, GERALD MESA, ROBERT M. MESA, WILLIAM MESA, and the JAMUL INDIAN VILLAGE, | ) | Case No. 98-860-L<br><br>**PLAINTIFFS' FIFTH REPORT ON STATUS OF RELATED DISTRICT COURT CASE** |
| | ) | Judge Edward J. Damich |
| Plaintiffs, | ) | |
| vs. | ) | |
| UNITED STATES OF AMERICA, DEPARTMENT OF INTERIOR, BUREAU OF INDIAN AFFAIRS, DEPARTMENT OF HEALTH AND HUMAN SERVICES, DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, and DOES 1-20, | ) | |
| Defendants. | ) | |

On April 19, 2000, Judge Diane Gilbert Weinstein (now Sypolt) originally stayed this case pending disposition of certain administrative appeals, concerning who are the lawful members of the Jamul Indian Village, and who are the lawfully elected leaders of the Village, which were then pending before the Interior Board of Indian Appeals, and which are now pending before U.S. District Judge Kessler in Rosales et al. v. United States et al. Case No. 1:03CV01117.

On March 19, 2004, this court continued the stay of further proceedings in this case and directed the Plaintiffs to file a report every 120 days on the status of the District Court Case known as Rosales et al. v. United States et al. Case No. 1:03CV01117.

Said District Court Case remains pending before the Hon. Gladys Kessler. Cross-motions for summary judgment have been filed by the Plaintiffs and Defendants, and the final briefing was filed by the Defendants on August 20, 2004.

Per this Court's March 19, 2004 order, Plaintiffs will report the issuance of any non-appealable final decision therein within 30 days thereafter.

On February 1, 2006 this court ordered the parties to file a joint status report, in light of the fact that the case had been stayed for a significant period of time. On March 10, 2006, the parties filed a Joint Status Report Requesting Continuance of the Stay, as ordered, outlining: (1) why the stay should be continued, (2) why issues pending in this case would be affected by resolution of Rosales et al. v. United States et al. Case No. 1:03CV01117, and (3) a comparison of the differences between the claims raised by all parties in each case.

Since the parties filed the March 10, 2006 Joint Status Report Requesting Continuance of the Stay, the Plaintiffs have been informed that certain non-members of the Jamul Indian Village have mailed a purported Notice of Preparation of a Draft Tribal Environmental Impact Statement/Report for the Jamul Indian Village Casino Project to the residents of Jamul, California, the County of San Diego, and the State of California. Exhibit A hereto.

This document was mailed without proper authorization of the lawfully elected leaders of the Village. Therein, a 500,000 square foot hotel, and a 205,000 square foot casino, parking garage, fire station, tribal center, human resources facility, a wastewater treatment plan and

detention basin are proposed to be constructed on "the existing Village site," including Parcel No. 597-080-01, as recorded in San Diego County, California, at File/Page No. 78-554597, and erroneously identified on Figure 1-2, attached to Exhibit A.

As noted in Plaintiff's Fourth Status Report, Parcel No. 597-080-01 is held in trust by the United States for the Plaintiffs, who are "such Jamul Indians of one-half degree or more Indian blood," and were designated by the Secretary of the Interior as trust beneficiaries of this allotment, pursuant to the grant deed recorded in San Diego County on December 27, 1978. Exhibit B hereto; Coast Indian Community v. U.S. (Fed. Cl. 1977) 550 F.2d 639; 1 Opinions of the Solicitor of the Department of Interior Relating to Indian Affairs 1917-1974 at 668, 724, 747, and 1479.

The Defendants confirmed in their August 3, 2000 response to the Plaintiffs' Freedom of Information Act (FOIA) request, that the "current trust parcel was accepted into trust in 1978 for Jamul Indians of ½ degree (4.66 acres)," and that there is "no record of the 1978 trust parcel being known as the Jamul Village." Exhibit C hereto.

Coast Indian Community, supra, held on nearly identical facts, that the parcel in question, "was not acquired for a tribe, leaving only the possibility under the [Indian Reorganization] Act that it was purchased for individual Indians. The deed and proclamation say nothing to contradict this. Thus, the land was taken in trust for the individual Indians." 550 F2.d 639, 651, n. 32. This is also consistent with Governor Arnold Schwarzenegger's Legal Affairs Secretary's December 20, 2005 letter to the Jamul Indian Village. Exhibit D hereto.

Plaintiffs do not consent to the proposed use of Parcel 597-080-01, outlined in Exhibit A. Such a use would violate the Plaintiffs' usufructuary property rights in their designated allotment

of the Parcel, under 25 U.S.C. 465 and 25 U.S.C. 345, and would forcibly evict them from their homes. Should Defendants permit such a use of this Parcel, without Plaintiffs' consent, Plaintiffs will become entitled to a preliminary mandatory injunction in this action to prevent the Defendants from failing to protect their usufructuary rights in this trust property for which the Plaintiffs are the designated beneficiaries, as held in Coast Indian Community v. U.S. (Fed. Cl. 1977) 550 F.2d 639, and as proscribed by the Defendants in 1 Opinions of the Solicitor of the Department of Interior Relating to Indian Affairs 1917-1974 at 668, 724, 747, and 1479.

As noted in United States v. Flournoy Live-Stock & Real-Estate Co. (D. Neb. 1895) 69 F. 886, 894, "[h]aving assumed the duty of securing the use and occupancy of these lands to the Indians, and being charged with the duty of enforcing the provisions of the acts of congress forbidding all alienations of the lands... the government of the United States, through the executive branch thereof, has the right to invoke the aid of the courts, by mandatory injunction and other proper process, to compel parties wrongfully in possession of the lands held in trust by the Untied States for the Indians to yield the possession thereof, and to restrain such parties from endeavoring to obtain or retain the possession of these lands in violation of law."

Plaintiffs therefore continue to submit that, just as Judge Diane Gilbert Sypolt originally found on March 15, 2000, there is good cause to continue the stay of this action, in light of the fact that a final non-appealable decision in the District Court action "may determine who won" the elections, who has individual standing to bring suit in this action, and "may help dispose of the question of who is an authorized agent to sue on behalf of Jamul Indian Village."

However, Plaintiffs hereby also continue to reserve the right to move to lift the continuation of the stay, should circumstances materially change following this status report,

particularly if those that threaten maintaining the status quo with regard to Parcel 597-080-01 take action to violate the Plaintiffs' usufructuary property rights in their designated allotment of the Parcel, pursuant to 25 U.S.C. 465 and 25 U.S.C. 345.

In the actual event that any of the proposed uses, identified in Exhibit A, are attempted on Parcel 597-080-01, Plaintiffs will move this Court to lift the stay of this action and preliminarily enjoin the Defendants from failing to protect Plaintiffs' usufructuary rights in this trust property for which they are the designated beneficiaries, pursuant to their claims in the Second through Sixth Causes of Action herein.

Dated: July 7, 2005 **WEBB & CAREY**

By: s/Patrick D. Webb

Patrick D. Webb
Attorneys for Plaintiffs
401 B Street Ste 306
San Diego CA 92101
Tel: 619-236-1650
Fax:619-236-1283

**DATE:** June 20, 2006

**TO:** Interested Persons

**FROM:** The Jamul Indian Village

**SUBJECT:** **NOTICE OF PREPARATION OF A DRAFT TRIBAL ENVIRONMENTAL IMPACT STATEMENT/REPORT FOR THE JAMUL INDIAN VILLAGE CASINO PROJECT**

**PUBLIC REVIEW PERIOD: June 26th – July 26th, 2006**

The Jamul Indian Village (hereinafter "the Tribe") is the Lead Agency for the preparation of a Draft Tribal Environmental Impact Statement/Report (Draft TEIS/R) for the proposed Jamul Indian Village Casino Project (Proposed Project). The Tribe proposes to build a casino/hotel facility on the existing Indian Village in the unincorporated community of Jamul™. The TEIS/R will be developed to comply with the provisions of the existing Tribal/State Compact as well as the newer environmental provisions of compacts approved in California. There are no local or federal actions associated with the Proposed Project.

**Project Location**

The Jamul Indian Village is located in southwestern San Diego County approximately one mile south of the community of Jamul **(Figure 1-1).** The Village is bordered by vacant land and Melody Road to the north, vacant and residentially developed land to the west, vacant land to the south and State Route 94 to the east. **Figure 1-2** shows the project site and vicinity. The Jamul Indian Village is located within portions of Section 10 and un-sectioned areas of Township 17 S, Range 1 East, San Bernardino Baseline and Meridian, Dulzura, CA and Jamul Mountains, CA, U.S. Geological Survey 7.5-minute Quadrangle. State Route 94 (SR 94) provides regional access to the project site from downtown San Diego, which is located approximately 20 miles to the west where it intersects with Highway 5. Local access to the Indian Village is provided directly from SR 94. From the project site, State Route 94 travels briefly north and then west to Downtown San Diego, passing through the unincorporated communities of Jamul, Casa de Oro, Spring Valley and Lemon Grove.

**Project Description**

The proposed gaming facility and hotel complex consists of 567,094 total square feet of building space. The hotel will include 400 beds in 361,900 square feet, and the casino building will cover approximately 205,194 square feet (73,469 square feet of which will be gaming floor area). Ancillary uses to the hotel and casino complex include a parking garage, fire station, tribal center, human resources facility, a wastewater treatment plant, and detention basin. Development will be phased with the construction of the casino in the first phase and the construction of the hotel approximately three years later. Development will be located on the existing Indian Village site and will span the existing creek that transects the project site. The Tribe has included an optional location for a new



Exhibit A

fire station, the location of which is off of the existing Indian Village site (see **Figure 1-2**). All development will be located outside of the 100-year floodplain.

**Purpose and Need**

The economic need for the project is evident when comparing the Tribe's socioeconomic conditions with those of the surrounding communities. The economy of Jamul Indian Village lags behind the economy of the local community in terms of the employment rate, median household income, and percentage of those living in poverty. The need for the development of this project is based on:

- The Tribal Government has no sustained revenue stream;
- The lack of employment opportunities for Tribal members (approximately 79% unemployed);
- The lack of economic development opportunities for tribal members on the Indian Village;
- The disadvantaged socioeconomic conditions of the Tribal Government and its members;
- The potential profitability of gaming; and
- The federal government and the state having cut back on programs which the Tribal Government has relied on to fund its governmental programs.

Through the proposed development, the Tribal Government is making an effort to improve the long-term economic condition of the Tribe and its members through the development of a stable, sustainable source of employment and revenue that takes advantage of the Tribe's reservation. Given the location of the reservation at the eastern extent of the unincorporated community of Jamul™ , this enterprise must independently attract patrons in order to be successful. For long-term feasibility, the project must have primary and secondary attractants to invite patrons to the reservation.

Presently, a substantial portion of Tribal members' individual incomes is derived from Tribal administration and programs, and in general there is a high reliance upon the Federal government for social services. The Jamul Indian Village is a federally recognized sovereign Indian Tribe. Jamul tribal enrollment totals 63 persons, with the majority aged 16 to 64. Of the total work force of 38 persons, 17 are unemployed, resulting in a tribal unemployment rate of 44.7 percent. It has been estimated that about 69 percent of the employed work force is living below the poverty guidelines (BIA-OTS, 1999). By comparison, the percentage of persons living in poverty for the state and county are much lower at 16.3 and 11.3 percent (U.S. Census Bureau, 2002). These statistics indicate that the economic status of individuals in the Jamul area are generally well below that of the rest of San Diego County.

The casino facility will be operated pursuant to the requirements of Federal law and the Tribal/State Compact between the State of California and the Tribal Government. The hotel and casino complex will provide the Tribal Government with a long term, sustainable revenue base.

Revenues will be used to fund Tribal governmental programs and decrease the Tribal Government's dependence on Federal and State funding. Besides governmental functions, the Tribal Government plans to use revenues to support social and educational programs for the elderly, the poor and younger Tribal members. Gaming revenues will also allow the Tribal Government to upgrade equipment, hire additional staff, and expand environmental, health and safety programs. The casino will provide employment opportunities for tribal members and many local non-tribal residents. Casino operations will also promote the purchase of goods and services, which may be provided by the local community.

**Environmental Requirements of the Tribal-State Gaming Compact**

The TEIS/R is being prepared to comply with the provisions of the Tribal/State Compact entered into between the State of California and Tribe on September 10, 1999. Pursuant to that compact, the Tribe adopted an Off-Reservation Tribal ordinance that allows for the development of a Tribal Environmental Impact Statement. In addition to the TEIS, the environmental document is also being drafted to comply with the TEIR provisions of newer compacts entered into between Tribes and the State of California.

As mandated by the Tribal-State Gaming Compact, the TEIR will do the following:

> "The TEIR shall provide detailed information about the Significant Effect(s) of the Off-Reservation Environment which the Project is likely to have, including each of the matters set forth in Exhibit A, shall list ways in which Significant Effects on the Environment might be minimized, and shall include a detailed statement setting forth all of the following:
>
> (1) All Significant Effects on the Environment of the Proposed Project;
>
> (2) In a separate Section:
>
> a. Any Significant Effects on the Environment that cannot be avoided if the Project is implemented;
> b. Any Significant Effects on the Environment that would be irreversible if the Project is implemented;
>
> (3) Mitigation measures proposed to minimize Significant Effects on the Environment, including, but not limited to, measures to reduce the wasteful, inefficient, and unnecessary consumption of energy;
>
> (4) Alternatives to the Project, provided that the Tribe need not address alternatives that would cause it to forgo its right to engage in the Gaming Activities authorized by this Compact on its Indian Lands;
>
> (5) Whether any proposed mitigation would be feasible;
>
> (6) Any direct growth-inducing impacts of the Project; and
>
> (7) Whether the proposed mitigation would be effective to substantially reduce the potential Significant Effects on the Environment."

In addition, the TEIR will include the following:

- Include a statement briefly indicating the reasons for determining that various effects of the Project on the off-reservation environment are not significant and consequently have not been discussed in detail in the TEIR

- Clearly identify and describe the direct and indirect Significant Effects on the Off-Reservation Environment giving due consideration to both the short-term and long-term effects.

- Describe feasible mitigation measures, which could minimize significant adverse effects, and distinguish between the measures that are proposed by the Tribe and other measures proposed by others. Where several measures are available to mitigate an effect, each will discussed and the basis for selecting a particular measure will be identified.

- Describe a range of reasonable alternatives to the Project or to the location of the Project, which would feasibly attain most of the basic objectives of the Project and which would avoid or substantially lessen any of the Significant Effects on the Environment, and evaluate the comparative merits of the alternatives;

- Include sufficient information about each alternative to allow meaningful evaluation, analysis, and comparison.

- Include an index or table of contents and a summary, which identify each Significant Effect on the Environment which proposed measures and alternatives that would reduce or avoid that effect, and issues to be resolved, including the choice among alternatives and whether and how to mitigate the Significant Effects on the Environment.

**Potential Off-Reservation Environmental Effects**

The following list identifies the specific environmental issues that may be significantly impacted and, thus, will be addressed in detail within the TEIS/R:

- *Land Resources;*
- *Water Resources;*
- *Air Quality;*
- *Biological Resources;*
- *Cultural Resources;*
- *Socioeconomic Conditions;*
- *Transportation;*
- *Resource Use Patterns;*
- *Public Services;*
- *Other Values;*

- *Environmental Justice;*
- *Growth Inducing Effects;*
- *Cumulative Effects;*
- *Indirect Effects; and*
- *Unavoidable Adverse Effects.*

**Discussion of Alternatives**

In addition to the analysis for the Proposed Project, the TEIS/R will describe a range of reasonable alternatives for the Proposed Project. The alternatives will be described and contrasted with the project in terms of the extent to which they can achieve the project objectives, while minimizing the impacts of the Proposed Project.

**Written Comments**

Written comments on this NOP are due to the Tribal Offices by 5 p.m. on July 26th, 2006. Comments are to be sent to:

Chairman Leon Acebedo
Jamul Indian Village
PO Box 612
Jamul CA 91935

Written comments should focus on potential off-reservation environmental issue(s) and any mitigation measures that the Commenter would like the Tribe to address in the TEIS/R.




SOURCE: Microsoft Streets & Trips, 2005; AES, 2006

*Jamul Indian Village Tribal EIS / 205565* ■

**Figure 1-1**
Regional Location




SOURCE: "Jamul MTS, CA" & "Dulzura, CA" USGS 7.5 Minute Topographic Quadrangles; Section 10, T17S, R1E, San Bernardino Baseline & Meridian; AES, 2006

*Jamul Indian Village Tribal EIS / 205565* ■

**Figure 1-2**
Site and Vicinity

RECORDING REQUESTED BY 258

AND WHEN RECORDED MAIL TO

Name Bureau of Indian Affairs
Street Southern California Agency
Address 5750 Division Street, Suite 201
City & State Riverside, California 92506

78-554597
FILE/PAGE NO.
BOOK 1978
RECORDED REQUEST OF
GRANTEE
DEC 27 1 49 PM '78
OFFICIAL RECORDS
RECORDER
SAN DIEGO COUNTY, CALIF.

SURVEY MONUMENT PRESERVATION USER FEE
$10.00

$5.00

SPACE ABOVE THIS LINE FOR RECORDER'S USE

TAX ROLL PARCEL NO. 597-080-01

# GRANT DEED

DOCUMENTARY TRANSFER TAX $ -0-
____ COMPUTED ON FULL VALUE OF PROPERTY CONVEYED,
____ OR COMPUTED ON FULL VALUE LESS LIENS AND ENCUMBRANCES REMAINING AT TIME OF SALE.
William H. Gearelli, Agency Realty Off. Bureau of Indian Affairs
Signature of Declarant or Agent determining tax. Firm Name

THIS INDENTURE, made the ____ day of ____, 19__

BETWEEN Donald L. Daley and Lawrence A. Daley

, the parties of the first part

and The United States of America in trust for such Jamul Indians of one-half degree or more Indian blood as the Secretary of the Interior may designate

, the parties, of the second part,

WITNESSETH: That the said parties of the first part, ~~for and in consideration of the sum of~~ ~~____ DOLLARS~~

~~lawful money of the United States of America~~ ~~to them in hand paid by the said party~~

~~of the second part, the receipt whereof is hereby acknowledged~~, do by these presents, GRANT for a valuable consideration unto the said parties of the second part,

and to their heirs and assigns forever, all that certain ~~lot~~, ~~piece~~ or parcel of land, situate, lying and being in the ____, County of San Diego, and State of California and bounded and particularly described as follows, to-wit: SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

ACCEPTANCE OF CONVEYANCE BY THE UNITED STATES IS TO BE ATTACHED HERETO AS EXHIBIT "B" AND RECORDED WITH THIS DEED.
THIS CONVEYANCE IS MADE IN ACCORDANCE WITH SECTIONS 5 AND 19 OF THE INDIAN REORGANIZATION ACT OF JUNE 18, 1934 (48 Stat. 985 and 988; 25 U.S.C. 465 and 479) AND MADE SUBJECT TO EASEMENTS AND RIGHTS-OF-WAY OF RECORD IN FAVOR OF THE PUBLIC OR THIRD PARTIES.

TOGETHER with all and singular the tenements, hereditaments and appurtenances thereunto belonging, or in anywise appertaining, and the reversion and reversions, remainder and remainders, rents, issues and profits thereof.

TO HAVE AND TO HOLD, all and singular the said premises, together with the appurtenances, unto the said parties of the second part, and to their heirs and assigns forever.

IN WITNESS WHEREOF, the said parties of the first part have hereunto set their hands and seals the day and year first above written.

X Lawrence A. Daley
X Donald L. Daley
Donald L. Daley and Lawrence A. Daley

STATE OF CALIFORNIA,
County of San Diego } ss.

On December 12, 1978, before me, the undersigned, a Notary Public in and for said State, personally appeared Lawrence A. Daley and Donald L. Daley

known to me to be the persons whose names are subscribed to the within instrument and acknowledged that they executed the same.

WITNESS my hand and official seal.

OFFICIAL SEAL
L. D. ARTHUR
NOTARY PUBLIC
PRINCIPAL OFFICE IN
SAN DIEGO COUNTY
My Commission Expires April 9, 1982

L. D. Arthur
Notary Public in and for said State.

Title Order No. ____ Escrow or Loan No. ____

MAIL TAX STATEMENTS TO ____
NAME ADDRESS ZIP

78-554597

DEED—GRANT—WOLCOTTS FORM 778
REV. 5-70

This standard form covers most usual problems in the field indicated. Before you sign, read it and make changes proper to your transaction. Consult a lawyer if you doubt the form's fitness.

Exhibit B

LEGAL DESCRIPTION

All that portion of Rancho Jamul, in the County of San Diego, State of California, according to L.S. Map thereof No. 430, filed in the Office of the Recorder of said San Diego County, May 28, 1931, more particularly described as follows:

Beginning at corner R.J. 16 as shown on said L.S. Map No. 430; thence along the Northerly line of said Rancho Jamul S. 88°42'00" E., 529.24 feet (record N. 88°42' W., 530.52 feet) to the Westerly line of that certain parcel of land noted Indian Cemetery on said L.S. Map No. 430; thence along said Westerly line S. 01°20'53" W., 239.66 feet (record N. 01°18' E., 239.0 feet) to the Southwest corner of said Indian Cemetery; thence along the Southerly line of said Indian Cemetery S. 88°39'07" E., 83.55 feet (N. 88°42' W., 83.5 feet) to the TRUE POINT OF BEGINNING; thence continuing along said Southerly line as follows: N. 01°20'53" E., 59.94 feet (record S. 01°18' W., 59.9 feet); N. 44°50'53" E., 88.55 feet (record S. 44°48' W., 88.5 feet); N. 87°54'53" E., 665.17 feet (record S. 87°52' W., 664.77 feet); N. 01°20'53" E., 58.04 feet (record S. 01°18' W., 58.0 feet); S. 88°42'00" E., 598.46 feet to the Southwesterly line of Campo Road said point being on a 555.59 foot radius curve concave Southwesterly, a radial line from said points bears S. 47°16'18" W.; thence Southeasterly along the arc of said curve, through a central angle of 03°29'08" a distance of 33.80 feet; thence leaving said Southwesterly line N. 88°42'00" W., 338.54 feet; thence S. 21°58'02" E., 257.03 feet; thence N. 86°48'26" W., 721.24 feet; thence N. 86°21'37" W., 388.78 feet to the TRUE POINT OF BEGINNING, said described land consisting of 4.66 acres, more or less.

EXHIBIT "A" TO DEED FROM DONALD L. DALEY AND LAWRENCE A. DALEY DATED DECEMBER 12, 1978.

78-554597

260

IN REPLY REFER TO:

UNITED STATES
DEPARTMENT OF THE INTERIOR
BUREAU OF INDIAN AFFAIRS
Sacramento Area Office
2800 Cottage Way
Sacramento, California 95825

ACCEPTANCE OF CONVEYANCE

The United States of America, acting through the undersigned, an authorized representative of the Secretary of the Interior, does hereby accept the conveyance made by Donald L. Daley and Lawrence A. Daley in that certain Grant Deed dated December 12, 1978. Said Grant Deed, with this Acceptance of Conveyance attached, shall be recorded in the Official Records of San Diego County, California.

Gregory

Date: DEC 21 1978

Charles L. Toyebo Jr.
ACTING Area Director

Pursuant to the authority delegated by 230 DM 1, 10 BIAM 2 (39 F.R. 32166) and 10 BIAM 3.1 (34 F.R. 637).

State of California )
) SS.
County of Sacramento)

On this 21st day of December, 1978, before me, the undersigned, a Notary Public in and for said State, personally appeared Charles L. Toyebo Jr., known to me to be the person whose name is subscribed to the within Acceptance of Conveyance and acknowledged to me that he executed the same for the United States of America.

IN WITNESS WHEREOF, I have hereunto set my hand and seal this date.

CARMEN G. FACIO
NOTARY PUBLIC
My Commission Expires August 10, 1981

Carmen D. Facio

EXHIBIT "B" TO DEED FROM DONALD L. DALEY AND LAWRENCE A. DALEY DATED DECEMBER 12, 1978.

before me, the undersigned, a Notary Public in and for said State, personally appeared Lawrence A. Daley and Donald L. Daley

known to me to be the person s whose names are subscribed to the within instrument and acknowledged that they executed the same.

WITNESS my hand and official seal.

OFFICIAL SEAL
L. D. ARTHUR
NOTARY PUBLIC
SAN DIEGO COUNTY
My Commission Expires April 9, 1982

L. D. Arthur
Notary Public in and for said State.

78-554597

Title Order No. ______ Escrow or Loan No. ______

MAIL TAX STATEMENTS TO ______ NAME ______ ADDRESS ______ ZIP

DEED—GRANT—WOLCOTTS FORM 778
REV 2-70

This standard form covers most usual problems in the field indicated. Before you sign, read it, fill in all blanks, and make changes proper to your transaction. Consult a lawyer if you doubt the form's fitness for your purpose.

Carmen Facio
05/09/00 11:34 AM

To: Nancy Pierskalla/DC/BIA/DOI@BIA

cc: George Skibine/DC/BIA/DOI@BIA

Subject: Re: Gaming in San Diego

I forwarded your inquiry down to the SCA Supt. I currently have nothing on .
We'll let you know.

For several years now, Jamul has been talking about getting the contiguous property - @ one point for a casino, and then again, just for a parking lot.

The current trust parcel was accepted into trust in 1978 for Jamul Indians of 1/2 degree (4.66 acres). They've expanded their membership, but the constitution states thay have jurisdiction over the Jamul Indian Village. I have no record of the 1978 trust parcel being known as the Jamul Village. There was also a small parcel accepted into trust in 1982 by the SCA Supt. for the Jamul Indian Village (1.37 acre).

Cuyapaipe has a reservation land base that there is no legal access to. They have an off-reservation piece that is leased to the So. Calif. Indian Health Council for 50 years. There's talk that they want the Health Council to move to another location so that Cuyapaipe can use the off-reservation tract for gaming. This tract is about 8.7 acres. An addition to this 8.7 acres was made in 1997 (1.43 acre) & its purpose was as the site of the Pinto Home for Girls and it's also under a 50-year lease. Of course, there's talk about putting more land in trust for Cuyapaipe for relocation of the health facility.

OFFICE OF THE GOVERNOR

December 20, 2005

Mr. Leon Acebedo
Chairman, Jamul Indian Village
P.O. Box 612
Jamul, California 91935

Re: Compliance with Class III Gaming Compact

Dear Chairman Acebedo:

In a letter addressed to you in August of this year, the State expressed its concern over the Tribe's public pronouncements regarding its goal to construct, build, and operate a 30-story hotel and casino on a site less than five acres in size. The State's review at that time suggested that construction and operation of such a facility might place the Tribe in material breach of its Tribal-State Class III Gaming Compact for a number of reasons including, but not limited to, the failure of the Tribe to meet its duty to "conduct Class III gaming in a manner that does not endanger the public health, safety, or welfare" (Compact, section 10.1), to operate a Gaming Facility only on its Indian lands (Compact, section 4.2), to comply with federal water quality standards applicable in California (Compact, section 10.2(b)), to appropriately analyze, discuss and mitigate potential adverse off trust land impacts of this proposed project in conformity with the requirements of Compact section 10.8.2, and to operate only those Gaming Devices authorized by the Compact (Compact section 4.0).

In response to the August letter, the Tribe met with representatives from this office and provided assurances that it would not commence its proposed casino project until such time as it complied fully with its compact obligations and that its project would be constructed and operated in full accord with the requirements of the Compact. Moreover, the Tribe's counsel advised this office that any related activities conducted on the Tribe's trust lands prior to full compliance with Compact section 10.8.2 would be nothing more than ceremonial in nature and not actual commencement of the project. Recent Tribal activities both on and off of the Tribe's trust lands, however, can only be construed as a violation of the provisions of Compact section 10.8.2 and possibly section 4.2, and a material breach of the Compact.

As of the date of this letter, we are informed that the Tribe has removed at least three existing residential structures from the site and utilized heavy construction equipment to move earth for what appears to be a grading purpose. We regard these activities as the commencement of casino construction prior to the preparation of the required environmental documentation and analysis in violation of Compact section 10.8.2. Our view is informed in part by the Tribe's own official statement regarding its anticipated commencement of its casino project. In a September 9, 2005, statement, the Tribe indicated that the first stage of its project would be to move tribal members "off the reservation, allowing room for bulldozers to begin construction of the new casino." In that announcement, the Tribe stated, "We expect to break ground in December." The Tribe's activities to date are consistent with this statement of intent and constitute a material breach of its obligations to comply with Compact section 10.8.2 and a potential violation of section 4.2.

We do not view the removal of tribal members from their homes on the Tribe's trust lands as a ceremonial act nor is it in any way without environmental significance. Neither is the commencement of grading of the land. Steps as significant as these prior to the preparation of environmental reports and consultation with San Diego County and affected local residents with respect to the identification and mitigation of significant off-reservation environmental impacts indicates that the Tribe is not acting in good faith to meet its environmental obligations under the Compact.

For these reasons, we are requesting, pursuant to Compact section 9.1(a) and (b), that the Tribe meet and confer with the State in the Office of the Governor on December 30, 2005, at 10:00 a.m., or at such mutually agreeable later date and time that is not later than January 4, 2006, in an attempt to resolve the issues involved in the Tribe's failure to comply with the Compact. The State further requests that the Tribe—and any individual or entity acting in furtherance of construction of the Gaming Facility and other development associated with it—immediately cease all construction and other activity with respect to that project until the parties have had an adequate opportunity to resolve the issues raised by this letter.

Pursuant to Compact section 9.1, the State specifically reserves the right to seek injunctive relief against further construction efforts by the Tribe with respect to the class III gaming project identified above in the event that the requests set forth in this letter do not receive a satisfactory response from the Tribe.

This letter shall further constitute the sixty (60) day written notice and opportunity pursuant to Compact section 11.2.1 (c) to cure the Tribe's material breach of its Compact obligations. We recognize that restoring the site to its condition prior to the removal of the residential structures is not possible. Therefore, we are requesting the Tribe to cure this breach by cessation of all construction and other activities with respect to the project until the parties

mutually agree that the Tribe has complied with its Compact obligations. Please also note that a judicial determination that the Tribe has materially breached the Compact after receiving this notice and failing to cure within said 60 day period allows the State to "unilaterally terminate" the Compact under Compact section 11.2.1(c).

We look forward to your prompt response to this letter.

Sincerely,

Andrea Lynn Hoch

ANDREA LYNN HOCH
Legal Affairs Secretary

cc: Eugene Madrigal, Esq.
28581 Old Town Front Street, Suite 208
Temecula, CA 92590

**CERTIFICATE OF SERVICE**

I, the undersigned, declare:

I am a citizen of the United States, a resident of the County of San Diego, State of California, over the age of eighteen years, and not a party to the within action; that my business address is 401 B Street, Suite 306, San Diego, California 92101.

On the date entered below, I served the within:

**PLAINTIFFS' FIFTH REPORT ON STATUS OF RELATED DISTRICT COURT CASE**

upon the parties interested in said action by placing a true copy thereof, in the United States mail and by email, addressed to the attorney as follows:

Alex Kriegsman, Esq.
Trial Attorney
Natural Resources Section
Environmental and Natural Resources Division
Department of Justice
Post Office Box 663
Washington, D.C. 20044-0663
Alex.Kriegsman@usdoj.gov

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed on July 7, 2006, at San Diego, California.

s/Patrick D. Webb
Patrick D. Webb