**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **WALTER J. ROSALES, et al.,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**UNITED STATES OF AMERICA, et al.,**<br><br>**Defendants.** | **Civil Action No. 03-1117 (GK)** |

**MEMORANDUM OPINION**

Plaintiffs are Walter J. Rosales and Karen Toggery.[1] Defendants are the United States of America, the U.S. Department of the Interior, the Bureau of Indian Affairs ("BIA" or "Bureau"), and the Interior Board of Indian Appeals ("IBIA" or "Board"). Plaintiffs bring suit under the Indian Reorganization Act of 1934 ("IRA"), 25 U.S.C. §§ 461-479, and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706, seeking to overturn the following: 1) the August 31, 1996 Secretarial election in which voters approved an amendment to the Jamul Village Constitution to lower the blood-quantum requirement for tribal membership and voter registration from one-half to one-quarter; 2) the October 15, 1996 decision of the Deputy Commissioner of Indian Affairs approving the

[1] The Complaint's caption lists the Jamul Indian Village ("Village") as a Plaintiff. Defendants object to the Village being named as a Plaintiff because, they argue, Plaintiffs lack authority to represent the tribe. Because the Court agrees and grants Defendants' Cross-motion for Summary Judgment, references to Plaintiffs herein do not include the Village.

amendment; 3) the Board's July 29, 1999 decision affirming the Secretarial election; and 4) the Board's March 4, 2003 decision affirming the Deputy Commissioner's approval of the amendment. See Pls.'Opp'n at 6. Plaintiffs seek an order declaring: "1) that the Village [C]onstitution has not been lawfully amended; 2) that the elections of 1997, 1999, and 2001, held by the faction using the lowered blood quantum to determine an individual's qualifications to vote, were not lawful; 3) that the BIA's decision of October 15, 1996, and the IBIA's decisions of July 29, 1999 and March 4, 2003, must be reversed and vacated; and 4) that the Government must recognize the 1997, 1999, and 2001 election of Plaintiffs ... as officers of the Village, pursuant to the terms of the original Village [C]onstitution." Id. at 37.

This matter is before the Court on Plaintiffs' Motion for Summary Judgment, [#25], and Defendants' Cross-motion for Summary Judgment, [#26]. Upon consideration of the Motions, Oppositions, Replies, and the entire record herein, for the reasons stated below, Plaintiffs' motion is **denied** and Defendants' motion is **granted.**

## I. BACKGROUND

### A. History of the Jamul Indian Village

The Jamul Indian Village, located in Jamul, California, is a tribal governmental entity of Kumeyaay Indians, recognized by Congress pursuant to the Indian Reorganization Act of 1934. The

Village was established in 1981 after twenty individuals submitted a proposed Village Constitution to the Bureau of Indian Affairs and petitioned under the IRA to organize as a community of "half-bloods." Rosales v. Sacramento Area Dir., 32 I.B.I.A. 158, 159-160 (1998) ("Rosales I"). The Bureau evaluated the request and concluded that twenty-three individuals were eligible to vote on the proposed charter in a constitutional election.[2] Id. at 160. On May 9, 1981, sixteen of the twenty-three eligible individuals voted in the constitutional election and unanimously adopted the proposed charter. Id. On July 7, 1981, the Acting Deputy Assistant Secretary approved the Village Constitution. Id.

Under Article III of the original Village Constitution, tribal membership was only available to persons having at least "1/2 degree California Indian blood quantum." Id. The relevant

---

[2]The original twenty-three eligible voters were Henry Aldamos, Sarah C. Aldamos, Tony Camacho, Isabel Cuero, Lupe J. Cuero, Mary A. Cuero, Ramona E. Cuero, Seraphile Helen Helm Cuero, Vivian C. Flores, Gerald Mesa, Leslie A. Mesa, Robert Mesa, Valentine Mesa, William C. Mesa, Eugene Meza, Kenneth A. Meza, Edward Rosales, Joe Luther Rosales, Manuel Rosales, Reginald S. Thing, Carlene A. Chamberlain, Marie A. Toggery, and Gennie M. Walker.

While Rosales I was pending before the Board, Dr. Michael G. Baksh, Ph.D., was conducting a Bureau-funded genealogical study to help resolve Village membership disputes. The study confirmed the identities of the twenty-three original Village members and confirmed their eligibility to participate in Village elections. The Bureau's Regional Director formally adopted the Jamul Indian Village Genealogical Study on September 30, 1998. Rosales v. Sacramento Area Dir., 39 I.B.I.A. 12, 14 (2003) ("Rosales IV").

As discussed in more detail below, Plaintiffs Walter J. Rosales and Karen Toggery were not among the twenty-three original Village members, but they claim that they were subsequently admitted.

provisions of the Village Constitution provide that all qualified voters of the Village who are eighteen years of age or older comprise the General Council, which is the tribe's governing body. Id. The General Council selects an Executive Committee from its members. Id. All members of the General Council are entitled to vote in tribal elections. Id. Only qualified voters may hold positions on the Executive Committee. Id. Thirty-percent of qualified voters must be present at General Council meetings to constitute a quorum. Id.

**B. The 1994 Recall Election**

On September 3, 1994, a faction led by Jane Dumas (the "Dumas faction") held an election to recall four Village officials who had been elected in 1992 (the "Hunter faction") and to install replacements for them.[3] The Bureau's Superintendent and Area Director refused to uphold the recall election because the Dumas faction had not complied with the Village Constitution's procedural requirements, A.R. 2335-39, and continued to recognize the tribal officials elected in 1992. Id.

Subsequently, the competing factions held separate elections in 1995, and each group claimed to have authority to lead the

[3]The Dumas faction sought to recall Chairman Raymond Hunter, Committee Member Marcia Goring-Gomez, Committee Member Mary Alveraz, and Secretary-Treasurer Lee Shaw-Conway. Dumas had been elected Vice-Chairman in the 1992 election. The group attempted to install Jane Dumas as Chairman, Joe Camacho as Vice-Chairman, Karen Toggery as Secretary-Treasurer, Adolph Thing as a Committee Member, and Mary Sanchez as a Committee Member.

Village based on the results of their respective contests. The dispute ultimately ended up before the Board. The Board held that it could not lawfully determine which faction's elections were valid, in part, because neither group could verify that only eligible members of the tribe had voted.[4] Id. at 166-167.

The Board acknowledged that its decision effectively reinstated the leaders elected in 1992, because that contest was the last election that had not been administratively challenged, and remanded the dispute to the Bureau's Area Director with "a request to assist the Village's actual members in addressing their membership and leadership problems."[5] Id. at 168. Plaintiffs are not challenging Rosales I in the case presently before this Court.

---

[4]Disputes over membership continue; Plaintiffs in the instant case claim that the Village's original members had admitted them to the tribe, along with other new members, after adopting the original Village Constitution. Defendants counter that the Village could not have admitted Plaintiffs (or any other new members) because the Bureau never approved enrollment of any new Village members as required by Article III, section 3 of the Village Constitution. Defs.' Cross-mot. Summ. J. at 12 n.5.

The Board did not resolve this factual dispute because, as discussed below, it disposed of Plaintiffs' claims on procedural grounds. Rosales v. Sacramento Area Dir., 34 I.B.I.A. 50, 54 (1999) ("Rosales II"); Rosales IV, 39 I.B.I.A. at 15-16. Because the Board did not reach the merits of Plaintiffs' claims respecting membership in the tribe, the Court cannot and will not do so in the first instance.

[5]As noted in footnote 2 supra, Dr. Baksh completed a Bureau-funded genealogical study to help resolve the Village's membership disputes.

Case 1:03-cv-01610-EGS Document 60 Filed 03/28/2007 Page 6 of 20

## C. **The 1996 Secretarial Election**

In February 1996, the then-recognized Village leaders who had been elected in 1992, Chairman Hunter and Secretary Shaw, requested a Secretarial election to amend the Village Constitution to lower the blood-quantum requirement for tribal membership and voter registration from one-half to one-quarter. According to the Bureau, Chairman Hunter and Secretary Shaw claimed authority to make the request pursuant to a November 4, 1995 General Council meeting at which five of the fifteen surviving original Village members voted in favor of Resolution 95.47 which authorized holding the election.[6] See A.R. 1446, 1707.

---

[6]The fifteen surviving original members were Sarah C. Aldamos, Isabel Cuero, Lupe J. Cuero, Mary A. Cuero, Seraphile Helen Helm Cuero, Vivian C. Flores, Gerald Mesa, Leslie A. Mesa, Robert Mesa, Valentine Mesa, William C. Mesa, Kenneth A. Meza, Edward Rosales, Carlene A. Chamberlain, and Marie A. Toggery. A.R. 1444. The five original members who apparently voted in favor of Resolution 95.47 (i.e., voted to hold a Secretarial election and amend the Village Constitution) were Lupe J. Cuero, Mary A. Cuero, Edward Rosales, Carlene A. Chamberlain, and Kennth A. Meza. A.R. 1446, 1707.

Plaintiffs dispute the sufficiency of the administrative record on this point. First, Plaintiffs point out that Resolution 95.47 did not include a sign-in sheet which would have assured that only lawfully admitted members had voted. Pls.' Mot. Summ. J. at 8. Second, Plaintiffs point out that the minutes of the November 4, 1995 meeting appear to be inconsistent with Resolution 95.47; the minutes indicate five original tribal members voted unanimously for Resolution 95.47, but the resulting Resolution itself indicates that eleven Village members voted unanimously for the measure. Id. (comparing A.R. 1446 with A.R. 1707). Plaintiffs do not, however, offer any evidence that Lupe J. Cuero, Mary A. Cuero, Edward Rosales, Carlene A. Chamberlain, and Kennth A. Meza were not in attendance or any evidence that they did not vote to amend the Village Constitution. Moreover, Plaintiffs do not offer any evidence that anyone voted against the measure.

(continued...)

On June 7, 1996, after reviewing Resolution 95.47, the Bureau authorized the Village to hold the Secretarial election. A.R. 1567. Eight of the fifteen surviving original Village members registered to vote on the proposed amendment.[7] Rosales II, 34 I.B.I.A. at 53.

In an August 28, 1996 letter to the Bureau's Area Director and Superintendent, sent merely three days prior to the previously scheduled election, Plaintiffs (through counsel) claimed Resolution 95.47 was illegal and threatened to "take action" if the election

---

[6](...continued)

Unfortunately, the Board did not make explicit findings on this issue. Obviously it would be inappropriate for this Court to do so as an initial matter. Nevertheless, the Bureau must have concluded that at least five of the surviving original members voted to hold the Secretarial election, given its position that the Village had not admitted new members prior to 1996. See Village Const. art. XVI ("[T]he Secretary of Interior or his authorized representative [has a duty] to call an election on any proposed [constitutional] amendment ... upon the receipt of a petition signed by at least thirty percent (30%) of the qualified voters....") A.R. 2374.

While the Board's rulings could have been much clearer and more fulsome, this is an APA administrative record case. Because the minutes of the November 4, 1995 meeting are evidence that at least five original Village members voted in favor of Resolution 95.47, and because Plaintiffs do not offer any contrary evidence, Plaintiffs have not established that there is not substantial evidence in the record to support the Bureau's conclusions. Requiring submission of a sign-in sheet with the Resolution might have been a preferable practice, but the Bureau's failure to do so does not warrant a finding that there is not substantial evidence that five original Village members called for the 1996 Secretarial election.

[7]The eight registrants were Isabel Cuero, Lupe J. Cuero, Mary A. Cuero, Gerald Mesa, Leslie A. Mesa, Kenneth A. Meza, Edward Rosales, and Carlene A. Chamberlain.

was held. A.R. 2280. The Bureau proceeded with the Secretarial election on August 31, 1996, and did not directly respond to the letter. Seven of the eight registered voters cast ballots in the election and unanimously voted in favor of the proposed amendment. Rosales II, 34 I.B.I.A. at 51. On October 15, 1996, the Deputy Commissioner of Indian Affairs approved the amendment which lowered the blood-quantum requirement for tribal membership from one-half to one-quarter Indian blood. Id.

**D. Subsequent Tribal Leadership Elections and the Board's Decisions**

After the amendment passed, competing factions within the tribe——those who were in favor of the amendment, and those who deny its validity——again held separate elections in 1997, 1999, and 2001. Plaintiffs reject the amendment's validity and, before the Board, challenged all elections in which individuals with one-quarter Indian blood participated (and the Bureau Area Director's recognition thereof). Plaintiffs also challenged the Defendants' failure to recognize them as the elected Chairperson and Secretary of the Village.

The Board rejected the challenge to the Secretarial election of 1996 on narrow procedural grounds, concluding that Plaintiffs were not qualified voters entitled to challenge the election's results under 25 C.F.R. § 81.22. Rosales II, 34 I.B.I.A. at 54. The Board also rejected Plaintiffs' challenge to the opposing faction's 2001 election because their claims presumed that the

Secretarial election had not resulted in valid amendment of the Village Constitution. Rosales IV, 39 I.B.I.A. at 15-16. Finally, the Board held that a validly administered election moots preceding election disputes and dismissed Plaintiffs' challenges to all elections prior to 2001. Id.

## II. ANALYSIS

### A. Standard of Review

When reviewing actions by an administrative agency, absent contrary statutory direction, courts are bound by the highly deferential standard embodied in the APA. 5 U.S.C. § 706. Under this standard, an agency's action may only be set aside if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." Id. If the "agency's reasons and policy choices ... conform to 'certain minimal standards of rationality' ... the [agency decision] is reasonable and must be upheld." Small Refiner Lead Phase-Down Task Force v. U.S. Envtl. Prot. Agency, 705 F.2d 506, 521 (D.C. Cir. 1983) (citation omitted).

It is also well settled that judicial review of administrative action is limited to issues that the parties presented to the agency. Nuclear Energy Inst. v. U.S. Envtl. Prot. Agency, 373 F.3d 1251, 1297 (D.C. Cir. 2004) ("It is a hard and fast rule of administrative law, rooted in simple fairness, that issues not raised before an agency are waived and will not be considered by a court on review."); see also United States v. L. A. Tucker Truck

Case 1:03-cv-01601-JDK Document 40 Filed 03/28/2007 Page 10 of 20

Lines, Inc., 344 U.S. 33, 37 (1952) ("Simple fairness ... requires ... that courts should not topple over administrative decisions unless the administrative body not only has erred but has erred against objection made at the time appropriate under its practice."). Therefore, the Court's analysis will be limited to issues raised at the administrative level, and its review will be governed by APA standards.[8]

**B. Standing**

It is undisputed that this Court has jurisdiction to review this matter pursuant to the Administrative Procedure Act. What is in dispute is whether Plaintiffs have standing to challenge the 1996 Secretarial election because they were not registered to vote as required by 25 C.F.R. § 81.6(d). Defs.' Cross-mot. Sum. J. at 25. To have standing, Plaintiffs must demonstrate that they have suffered an "injury in fact," that the conduct complained of is "fairly traceable" to the challenged action, and that the injury would likely be redressed by a favorable decision. City of Orrville v. Fed. Energy Regulatory Comm'n, 147 F.3d 979, 985 (D.C. Cir. 1998) (citing Bennett v. Spear, 520 U.S. 154 (1997)). Plaintiffs have satisfied these requirements in this case.

[8]For example, Plaintiffs argue that the Secretarial election must be declared invalid because it occurred more than 90 days after the request was made, in violation of 25 U.S.C. § 476(c)(1)(B). However, as Defendants point out, Plaintiffs did not raise this argument in their appeals to the Board. Accordingly, it will not be addressed herein.

Plaintiffs have suffered injury in fact, as they contend that "the Government has failed to recognize [their] election as officers of the village in 1997, 1999, and 2001, due to the purported 1996 amendment of the membership requirements of the Village [C]onstitution." Pls.' Opp'n at 9. Plaintiffs' injury can be traced to the Defendants' actions because they stem from the Board's decisions upholding the 1996 amendment. Finally, Plaintiffs' injuries can be redressed by a Court order declaring that the Board's decisions and the Secretarial election are invalid. <u>See</u> <u>Feezor v. Babbitt</u>, 953 F. Supp. 1, 4 (D.D.C. 1996) (holding that individual members of an Indian tribe had standing to challenge the Board's approval of an ordinance which affected tribal membership by changing blood-quantum requirements).

To have standing, Plaintiffs must also show that they fall within the "zone of interests" encompassed by the statute under which they bring suit. <u>Ass'n of Data Processing Serv. Orgs., Inc. v. Camp</u>, 397 U.S. 150, 153 (1970). Plaintiffs here sue under the IRA, which "provided the authority and procedures for tribes to organize themselves and adopt tribal constitutions and bylaws." <u>Feezor</u>, 953 F. Supp. 1 at 5. Under the IRA, a tribe's authority to adopt and amend a constitution is subject to approval by the Secretary of the Interior. 25 U.S.C. § 476. Plaintiffs allege they are members of a federally recognized tribe and challenge the Secretary's approval of an amendment to their tribe's Constitution.

Thus, they plainly fall within the zone of interests that the IRA was designed to protect. See Feezor, 953 F. Supp. 1 at 5.

**C. The Board's Decisions**

Plaintiffs challenge several different decisions by Defendants. However, the key issue is whether the Board's determination that Plaintiffs were not qualified voters entitled to challenge the constitutional amendment adopted in the August 31, 1996 Secretarial election satisfies the standards of the APA set forth at 5 U.S.C. § 706.[9] Rosales II, 34 I.B.I.A. at 54.

---

[9]In some of their papers, Plaintiffs claim that the Bureau Area Director lacked "jurisdiction" to hold the Secretarial election while disputes were pending on appeal before the Board. Pls.' Compl. at ¶ 33. Plaintiffs' argument may be analogized to the rule that federal district courts lack jurisdiction over cases appealed to a higher court. See United States v. DeFries, 129 F.3d 1293, 1302 (D.C. Cir. 1997) (holding that filing a notice of appeal divests the district court of jurisdiction).

Federal courts must address jurisdictional challenges before reaching the merits of a claim because adjudicating the substance of a dispute without authority to do so violates Article III of the Constitution. Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 101 (1998) ("Article III jurisdiction is always an antecedent question."). If the rules discussed in DeFries and Steel Co. were directly applicable to agencies, the Board, and this Court, would arguably need to assess the Bureau Area Director's "jurisdiction" to hold the Secretarial election before determining whether 25 C.F.R. § 81.22 precludes Plaintiffs from contesting the election's results. However, our Court of Appeals has rejected this approach and has treated attempts to invoke the analogy as a merits challenge under the APA. Chamber of Commerce v. U.S. Sec. and Exch. Comm'n, 443 F.3d 890, 897-99 (D.C. Cir. 2006)(noting that the analogy fails because agencies are not constrained by Article III).

Moreover, although the Board acknowledges that agency policy usually prohibits the Bureau from taking action in cases while appeals are pending, the policy appears to be flexible. See Rosales I, 32 I.B.I.A. at 159 (criticizing the Bureau Area Director's decision to issue a ruling in a case while an appeal was

(continued...)

Case 1:03-cv-00810-EGK Document 60 Filed 03/28/2007 Page 13 of 20

Plaintiffs' arguments respecting the validity of the 1997, 1999, and 2001 tribal leadership elections hinge on their claim that the 1996 Secretarial election was invalid and must be overturned. For the reasons stated below, the Court concludes that the Board's determinations were not arbitrary, capricious, contrary to law, or an abuse of discretion. 5 U.S.C. § 706. Therefore, Defendants are entitled to summary judgment on all claims. Id.

**1. Rosales II**

The Bureau approved Resolution 95.47 on June 7, 1996. A.R. 1567. After learning that the Bureau intended to hold a Secretarial election on August 31, 1996, to amend the Village Constitution, Plaintiffs' counsel, Patrick Webb, waited until August 28, 1996 to send a letter to the BIA disputing the Resolution's legality and threatening that his clients would "take action" if the election was held. A.R. 2280. Interestingly, Webb's letter did not identify his "clients." Id. Despite the letter, the election took place, as scheduled, on August 31, 1996. Plaintiffs appealed pursuant to 25 C.F.R. § 2.8, claiming that the Bureau had failed to act on their letter and arguing that the Board

---

[9](...continued)
pending but, nevertheless, adopting the ruling).

Consequently, Plaintiffs' claim that the Bureau lacked jurisdiction to hold the Secretarial election is not persuasive.

should nullify the resulting amendment which had been passed. A.R. 2272.[10]

The Board held that, by holding the election, the Bureau had, in effect, acted on and rejected Plaintiffs' letter, and concluded that the response was proper. Rosales II, 34 I.B.I.A. at 52-53. The Board also held that only the eight individuals who registered to vote in the August 31, 1996 Secretarial election were "qualified voters" entitled to contest the election's results. Id. at 53 (interpreting 25 C.F.R. §§ 81.6(d), 81.22).

Plaintiffs concede that they did not register to vote in the August 31, 1996 Secretarial election. Instead they argue that all of the Village's original members were qualified voters by virtue of their registration for the May 9, 1981 Secretarial election. The Board concluded, however, that Plaintiffs were not original members of the Village and, in any case, interpreted 25 C.F.R. § 81.6(d) to require registration for each individual Secretarial election. Id.

**a. Response to Plaintiffs' August 28, 1996 Letter**

Agencies are entitled to substantial deference when interpreting their own regulations. Thomas Jefferson Univ. v. Shalala, 512 U.S. 504, 512 (1994). So long as an agency's interpretation "does not violate the Constitution or a federal

[10]25 C.F.R. § 2.8 authorizes certain aggrieved individuals to appeal Bureau officials' inaction.

statute, it must be given controlling weight unless it is plainly erroneous or inconsistent with the regulation." Stinson v. United States, 508 U.S. 36, 45 (1993)(citations and quotations omitted). In the instant case, the Board's interpretation must be upheld under Stinson and Thomas Jefferson University.

The Bureau effectively rejected all of Plaintiffs' requests and arguments by holding the election. The Board admitted that the Bureau "might have been well-advised" to respond to Plaintiffs' letter in writing. Rosales II, 34 I.B.I.A. at 53. The Court agrees, but cannot conclude that rejecting Plaintiffs' request by holding the election fails to satisfy "minimal standards of rationality," particularly given that Plaintiffs' letter appears to have been sent only three days prior to the scheduled election. Small Refiner Lead Phase-Down Task Force, 705 F.2d at 521. Plaintiffs had ample advance notice of the election but waited until the last minute to protest. See A.R. 1567 (noting that the Bureau approved the election June 7, 1996). Moreover, the Court is not aware of any statutory or regulatory provision requiring the Bureau to respond in writing, and Plaintiffs have not cited any such authority.

On these facts, the Bureau could not reasonably have been expected to postpone or cancel the Secretarial election simply because Mr. Webb sent a letter threatening future action by his unnamed clients. Therefore, the Board's conclusion that the Bureau

satisfied the requirements of 25 C.F.R. § 2.8 by holding the election is not arbitrary, capricious, or contrary to law.

**b. Plaintiffs' Challenge to the Results of the 1996 Secretarial Election**

The Board's conclusion that 25 C.F.R. § 81.6(d) and § 81.22 bar Plaintiffs from contesting the amendment's validity does not violate any federal statute and is not "plainly erroneous or inconsistent with the regulation." Stinson, 508 U.S. at 45 (citations and quotations omitted).

The Board held that only the eight individuals who registered to vote in the August 31, 1996 Secretarial election were "qualified voters" entitled to contest the election's results. Rosales II, 34 I.B.I.A. at 52-53 (citing 25 C.F.R. §§ 81.6(d), 81.22).

Under section 81.22, only "qualified voter[s]" may contest election results. Under section 81.6(d), when a tribe wants to hold a Secretarial election to amend its constitution, "only members who have duly registered shall be entitled to vote; provided, that registration is open to the same class of voters that was entitled to vote in the Secretarial election that effected its reorganization, unless the amendment article of the existing constitution provides otherwise." The Bureau and the Board read section 81.6(d) to require registration for each particular Secretarial election, and further conclude that only registrants are qualified voters within the meaning of section 81.22.

Plaintiffs' position is that all of the Village's surviving original members were qualified voters by virtue of their original registration for the 1981 election. They argue that the constitutional amendment is invalid because only seven of the fifteen surviving members voted in favor of it. See Village Const. art. XVI (noting that the majority of qualified voters must vote in favor of an amendment for it to become effective, and at least fifty-one percent of the individuals entitled to vote must participate in the election) A.R. 2374.

As noted earlier, agencies are entitled to substantial deference when interpreting their own regulations, especially when those regulations are as detailed as those being relied upon in this case. Moreover, Plaintiffs have not demonstrated that the Board's interpretation of section 81.6(d) conflicts with any statute or regulation.[11] See Thomas Jefferson Univ., 512 U.S. at 512; Stinson, 508 U.S. at 45. Accordingly, the Board's interpretation must be upheld. However, even if the Court were to credit Plaintiffs' interpretation, it is undisputed that Plaintiffs are not original Village members and did not register to vote in the August 1996 election. In light of those facts, Plaintiffs have

[11] Plaintiffs maintain that the Board's interpretation of 25 C.F.R. § 81.6(d) is inconsistent with 42 U.S.C. § 1973gg-6 which prohibits removing registrants' names from an official list of eligible voters in "elections for Federal office." Pls. Mot. Summ. J. at 24. Section 1973gg-6 is, however, inapplicable because "[t]he term 'Federal office' means the office of President or Vice President, or of Senator or Representative in, or Delegate or Resident Commissioner to, the Congress." 2 U.S.C. § 431.

not advanced any theory as to how they are qualified voters entitled to contest the 1996 election results at issue. Thus, the Board correctly denied Plaintiffs' challenge, and the Court upholds the Board's determination that the Village Constitution was validly amended.[12]

**2. Rosales IV**

Plaintiffs seek to overturn tribal leadership elections held in 1997, 1999, and 2001 "by the faction using [a] lowered blood quantum" to determine voters' eligibility. Because a valid tribal election moots challenges to earlier elections, the Court will begin its analysis with the 2001 contest. See, e.g., Hamilton v. Sacramento Area Director, 29 I.B.I.A. 188, 188 (1996).

Plaintiffs advance two arguments respecting the validity of the 2001 election. First, Plaintiffs argue that the 1996 Secretarial election did not amend the Village Constitution and lower blood-quantum requirements for tribal membership. The Court rejected that argument in section III.C.1 supra, and Plaintiffs do not contend that the election was not conducted in accordance with the amended Village Constitution.

---

[12]Out of an abundance of caution, the Court is compelled to emphasize that it only resolves the two narrow issues ruled on by the Board in Rosales II. Those issues are whether the Bureau responded to Plaintiffs' letter and whether Plaintiffs are qualified voters entitled to contest the results of the Secretarial election.

The Court makes no findings as to whether the Village admitted new members prior to 1996, or whether Chairman Hunter properly requested the Secretarial election.

Second, Plaintiffs argue that 25 U.S.C. § 476 of the IRA requires Village leaders and "actual members" to possess one-half degree or more "Indian blood." A.R. 2273. The Board previously espoused this very position in 1993; however, in Rosales I the Board re-interpreted section 476 in light of Congress' decision to add subsections (f) and (g) to the statute in 1994.[13] 32 I.B.I.A. at 163-66. The Board concluded that the 1994 revisions expanded the Village's right to define its own membership by lowering blood-quantum requirements. Id.; see also Chevron USA, Inc. v. Natural Res. Def. Council, 467 U.S. 837, 842-43 (1984)(noting that reasonable interpretations of an ambiguous statute by an agency responsible for administering the provision must be upheld).

---

[13]The subsections provide:

> (f) Departments or agencies of the United States shall not promulgate any regulation or make any decision or determination pursuant to the [IRA] as amended, or any other Act of Congress, with respect to a federally recognized Indian tribe that classifies, enhances, or diminishes the privileges and immunities available to the Indian tribe relative to other federally recognized tribes by virtue of their status as Indian tribes.
>
> (g) Any regulation or administrative decision or determination of a department or agency of the United States that is in existence or effect on the date of enactment of this Act [enacted May 31, 1994] and that classifies, enhances, or diminishes the privileges and immunities available to a federally recognized Indian tribe relative to the privileges and immunities available to other federally recognized tribes by virtue of their status as Indian tribes shall have no force or effect.

Plaintiffs did not appeal Rosales I, and offer no other basis for prohibiting the Village from lowering its blood-quantum requirements. Additionally, the Board's interpretation is not unreasonable. Chevron USA, Inc., 467 U.S. at 842-43. Plaintiffs' challenge to the 2001 election is, therefore, rejected; the election, and Defendants' recognition thereof, is affirmed. Plaintiffs' challenges to the 1997 and 1999 contests are rejected as moot.[14]

**IV. CONCLUSION**

For the foregoing reasons, Plaintiffs' Motion for Summary Judgment, [**#25**], is **denied**, and Defendants' Motion for Summary Judgment, [**#26**], is **granted.** The case is **dismissed.** An Order will issue with this Memorandum Opinion.

/s/
March 8, 2007 Gladys Kessler
U.S. District Judge

**Copies to:** Attorneys of record via ECF.

[14] In Rosales v. Sacramento Area Dir., 34 I.B.I.A. 125 (1999) ("Rosales III") the Board addressed Plaintiffs' challenge to the 1997 tribal election. While that challenge was pending, an election took place in 1999. The Board held that Plaintiffs had not contested the 1999 election, and found their 1997 challenge moot. Because the Court upholds the validity of the 2001 tribal election, there is no need to determine whether Plaintiffs challenged the 1999 election.